Mr. Byler, we'll hear from you first. Good morning, Your Honors. My name is Phil Byler, representing Thomas Rossley. In his case for Title IX and ADA discrimination and fundamental fairness denial that arose out of his expulsion one month short of his graduation for sexual assault, he says he did commit and which we submit the evidence shows he didn't commit. Summary judgment was granted here and we say, and you see a ten-volume record was not proper here. Now, you have requested addressing appellate jurisdiction, and actually is very useful for a reason you may not appreciate yet, but I hope you do, why that's a useful place to start. And why was there that stipulation of counsel dismissing without prejudice the selective enforcement claim? You know, if we need to dismiss with prejudice, as in Western American Insurance Company, okay. But I want you to understand that the stipulation here was not intended as a tactic as I think it was in Minnesota Pet Breeders' case, but to deal with a practical problem in this case that deals with why, what kind of claims we got. For Thomas, the value of the selective enforcement claim is in pointing to, you know, putting a light on the gender bias that informs what Drake admits and the district court acknowledges the victim-centric system that produced the erroneous outcome in this case. Again, if you'd repeat that, it was not entered into as a tactic. What was it if it wasn't a tactic to get an appeal immediately on the claims that you're more interested in? Well, not more interested in. Or whatever, however you want to characterize it, to get an appeal on these claims without having to try the other claims. Well, you can see the briefing that we're more than interested. See, a selective enforcement claim doesn't really get you anything. You can't call back Jane for an investigation and the damages according to the damages expert report that's part of the pretrial record for Thomas has to do with his erroneous expulsion. So what's the relief there? That's why I said- You brought the claim. Well, I understand. If you're saying you're abandoning the claims that were dismissed without prejudice, then that will clear up the- The reason I want you to understand why I took the approach I did, okay? Because it goes to proof of gender bias. The district court said, well, there's gender bias as to the selective enforcement, but not to erroneous outcome. No, that doesn't work. They're not distinct. They come from the same problem, which is that there is a victim-centric disciplinary process that is gender biased. You see, there was a differential treatment, which you can't deny. Jane Doe is not even investigated for what arguably was sexual assault. But your client would not make a charge, right? Well, he said that in the context of Dean Parker saying, this is retaliation. And this leads to my point. The erroneous outcome case is powerful, but the selective enforcement, you can draw some issues. But the point is that Jane Doe is not investigated even in the context of Dean Parker saying, well, that would be retaliation. Why? And this is in contrast to Thomas, who he says he did not commit sexual assault. The record shows that. But he's investigated, he's charged, a disgraceful two versus one hearing, and he's expelled. That's the differential treatment. With the district court- Is this sort of a rush to judgment argument you're making? What do you mean, a rush? I don't know. Is it cut and dried once they fall? Well, you could say that in terms of Thomas being found guilty. And yes, you can say that. Well, I'm not saying that. I understand. But we say there is a miscarriage of justice here. But this is not a lawsuit about retrying the disciplinary procedure, right? You've got to prove gender bias? Yes. Okay. So even if they got it wrong on the facts, that doesn't by itself show what you need to prove here. Well, there's two elements to the erroneous outcome test. One is an erroneous outcome. And so you end up looking at the facts for that purpose. And secondly is gender bias. And why I say the value of the selective enforcement case comes from the insight it gives you on As to Thomas, it's disregarded by the investigators and the hearing officer of Foxhoven. They know about it. They just disregard it in their decision-making. Are you still talking about jurisdiction or are we past that? What's the point? I understand why you think that claim would help you on the other claim. But how does that excuse your following the normal rules on a public jurisdiction? Well, I started out by saying, if need be. I heard you start with that. Yeah. So if need be, okay. All right. But I want you to understand why it's being approached that way and why it is useful to look at aspects of how the case worked. What do you mean why it's being approached that way? You mean you wanted to dismiss those without prejudice and appeal this case so that if you win on this case, you can bring the other case back because it's important? Well, no. I want you to understand why it was that it takes not even a second seat. You know, why it would be. It's not like a contract A, contract B claim, and if you got B, you're okay. It's a problem that, well, my Midwest upbringing, the animal is the ADA in Title IX on its outcome. The selective enforcement is the tail. You got an animal without a tail. If you got a tail, you don't. And that's why we're proceeding. But I wanted you to understand that looking at how the system worked, you see the elements of gender bias. In the case against Thomas, Jane's description of the sexual assault with her pants still on doesn't work. The investigators ignored it. Foxhoven, the hearing officer, rewrote the facts without any evidence in the records to support it, to say the pants were off, and to make it possible. In the case against Thomas, the timeline admittedly, with respect to the sexual assault, both the hearing officer and the hearing officer, they couldn't figure out the timeline. Well, there's a reason for that. The time didn't allow for it. The time didn't allow for it. From the time the safe cab driver dropped them off at the fraternity house to the time when Jane is texting her friend, there's not time for the sexual assault. And that's why Thomas didn't recall it, because it didn't happen. But the investigators and Foxhoven disregarded. In the case against Thomas, after Jane Doe leaves Thomas, when Thomas gave him a kiss and then he passed out, she said, oh, that's when the sexual assault must have occurred, although she didn't recall it, how it commenced. Jane goes to the room of frat brother student P, jumps in his bed. Then, after he kicks her out, goes to frat brother student I, spends the rest of the morning cuddling, talking about having a relationship, and gives him oral sex, inconsistent with the sexual assault being incurred. The investigators, oh, it's trauma, and Foxhoven excludes it from evidence. In the case against Thomas, Jane has no rape test, no medical evidence, no DNA evidence. And yet, clearly, Thomas had taken Adderall for his ADHD and mixed alcohol. He had erectile dysfunction. And yet, this is all rationalized away. Why? Because what informed both selective enforcement and the erroneous outcome was, what Dr. Bardner expert said, confirmation bias stemming from viewing Jane as a victim and Thomas as the male aggressor. The sole ground. It could be called what? Victim-centered approach to the case? Yeah, victim-centered. And this leads to one point I really want to get to. Title IX. The only reason there was supposedly a dismissal of the erroneous outcome was the lack, supposedly, of evidence of gender bias. Maloney, I mean, I fully briefed this. But I want to go to, first of all, just proof of the trauma. Dr. Bardner explains how that is a gender-biased pseudoscience. Parker, McKinney, and Cerno all testify about using trauma to explain away Jane's inconsistencies. Sister Court says, well, that's just part of the victim-centered system. Doesn't work. Because for four reasons, you have a victim-centered system that is both that and gender biased. One. And it's true throughout the country. The norm is female complainant, male respondent. True at great. Tenth Circuit appeal, I just argued six weeks ago, it was all female complainant, all male respondent. I deal with the particulars in the brief. Two. The Dear Colleague letter in 2011 said that universities had to do these proceedings in order to protect women. This came to the one in five statistic. And therefore, the Dear Colleague letter said you had to have reduced procedural protections for accused. Now, Dr. Bardner tears apart the one in five statistic. It's false. But nonetheless, that's what was done. Third reason. Universities cannot wash their hands of this or call it, well, it's just disparate impact. It's not. Because they knew when they did these proceedings that these were intended to protect women. That's what the letter said. Women. And what is totally the case is that universities have a responsibility to have fair procedures. And that's why we have the 2017 Dear Colleague letter, which vacated the 2011 Dear Colleague letter for this very reason. That the Dear Colleague letter in 2011 favored complainants, which happened to be female, over respondents, which happened to be male. And the 2017 letter says you can't have rules doing that. Drake, with his victim-centered process, is gender-biased also. And that's why when I went through those examples of how things worked in the process of the system, there was a gender bias at work. That confirmation bias viewing female victim, respondent, aggressor. I might add that Doe v. Miami picked up this point. It's one reason why they found gender bias. Another case where I want to bring your attention to is Judge Barrett's decision for the Seventh Circuit that came out this summer in Doe v. Purdue. A motion to dismiss case, right? Yeah, I know. And what I say in my brief is, look, it's still relevant because the facts as alleged are the facts we prove. And Judge Barrett's opinion is wonderful. But she discusses Title IX in her opinion that upheld that complaint in terms of gender bias. Well, I point that out to you because you have a situation. Doe v. Columbia was another one. Doe v. Columbia where the court said, look, if you have rules favoring complainants over respondents, you can have an inference of gender bias. What we have shown in this record, ten volumes worth, is exactly that. You know, yeah, I'm probably proud of both Doe v. Columbia and Doe v. Purdue because I happen to be the winning appellate lawyers. And so when I did this record, I was very keen to elements to prove gender bias. And we did it. And that's why I take some umbrage about what happened here and why I had to get to you with what is presently before the court. I'd like to reserve a minute for rebuttal. You may. Thank you for your argument. Ms. Haas, we'll hear from you. Thank you. May it please the court. I'm Frances Haas, and I am an attorney for the defendants' appellees, Drake University and its board of trustees. I will start with the Title IX claim and the erroneous outcome argument. Do you want to say anything about jurisdiction plainly? Sure. Unless plaintiff is dismissing the remaining claims, the claims that were dismissed without prejudice, I do not believe this court has jurisdiction over this appeal because there is no operable final order. Which is the closest case? I would cite the court to the Ruppert case. Which one? Ruppert. Yes, thank you. Any other questions about jurisdiction, Your Honor? No, thank you. Okay. Turning to the Title IX claim and the point that plaintiff's counsel made about the selective enforcement claim versus the erroneous outcome claim, the district court was correct in distinguishing those two claims and dismissing the erroneous outcome claim because there was no evidence that sex played any kind of role or motivated his expulsion, the plaintiff's expulsion. The selective enforcement claim had different elements. That claim was about whether the university had decided to initiate proceedings, disciplinary proceedings based on sex. One way to examine this distinction is to look at it through the lens of Title VII where you have disparate or discrete adverse actions. Just because a plaintiff in a Title VII case has a disputed issue of fact on a failure to promote claim doesn't mean that a separate claim for termination, wrongful termination based on sex, that there's a disputed issue of fact on that discrete adverse action. So that in and of itself is not evidence of sex bias sufficient to withstand summary judgment. Turning then to a few other points that plaintiff's counsel made about evidence of sex bias, there is a lot of briefing devoted to whether the acts in question could have occurred the way the university found they had occurred. And certainly people come to these sorts of conclusions all different ways. But what's missing from this analysis is whether any of those decisions were made because of sex bias. There's simply no evidence of that. And there's plenty of case law that says that courts aren't supposed to substitute their own judgment for the decision makers in these types of student disciplinary proceedings. Again, turning to Title VII, it's similar to the business judgment rule where people can make different decisions. But just because you may have made a different decision doesn't mean that it is a function of sex bias. And that applies here as well. I wanted to also address the expert opinion evidence, which was referred to in oral arguments as confirmation bias, but in the briefing as victim-centered approach or a trauma trope. In listening to that argument, it sounded like the argument to me was there is a sex-neutral, facially-neutral policy in the Code that applies this disciplinary process. And the argument is, well, there's a disparate impact on male respondents. Disparate impact claims are not actionable under Title IX. And it sounds like that's the argument being made there. What's your best authority on that point? I would cite the court to the HADAC case. That's H-A-I-D-A-K-933-F-3-56. That's a First Circuit case from 2019. What evidence is needed for a Title IX claim to survive summary judgment on erroneous outcome is evidence of sex bias from statements from decision makers, disparate treatment, pressure from an outside source, and there's none of that here in this record. So the district court was correct in dismissing... What about the Dear Colleague letter? The Dear Colleague... The original one. The original one. The district court correctly found that guidance, sex-neutral guidance from the Federal Department of Education isn't in and of itself evidence of external pressure. And there's plenty of case law to support the district court's holding on that, Your Honor. It's simply there's no tie to that sort of... There's no tie between that and sex bias. And I would also note that there was a remark made about the 2017 Dear Colleague letter, but that was issued after the plaintiff's expulsion in this case. It would not apply here. And I would also note just briefly on the disability discrimination claim, the Title III claim. Again, we believe the district court was correct in dismissing those claims. Excuse me, that claim. I think the Mershon case from this circuit provides the best guide to how to analyze those claims. And what is most important there is that a specific request for an accommodation be made. And there is simply no evidence of that here in this case. What about the father's request? The father, according to the record, called the Dean of Students Office and demanded an accommodation for his child. For sure. And his father did not make a specific request for an accommodation. Under the Mershon test, excuse me, under the Mershon case, in order to meet the prima facie elements of a failure to accommodate claim under Title III, the plaintiff must specifically identify the accommodations which were sought and rejected. That didn't happen here. And this concept of making a request for a specific accommodation is not unique to Title III claims. That expectation is also present for Title I claims. And I would cite the court to the, I believe it's Fjellstad case. I'm probably mispronouncing that. And so we believe the court's decision on that point was appropriate as well. And that's the in-bank opinion, right, that you're referring to? I confess I don't know whether it's en banc. Okay, thank you. I'm sorry. And what was the title of that case? I'm going to spell it because I mispronounced it. Oh, well, what was the citation? Oh, sure. 188 F3rd 944. Okay, thank you. What was that one case from 933 F3rd? Did you require Mr. Benton's earlier question? Sure. Was that? I missed the page number. Oh, I'm sorry. Let me see. Page 56, Haydick from the First Circuit. Okay, thank you. Yes, thank you. You say that says that Title IX doesn't recognize a disparate impact claim. That's correct, Your Honor. We'll look at it. What about the argument that the erroneous outcome is plainly erroneous because of the timeline and so forth? Do you have any response to that? Certainly. So let's take that argument is true for the purposes of this appeal and say that it was wrong. You still need evidence of sex bias. Oh, so you want to stipulate that it? No, I don't want to stipulate that. We shouldn't, in our analysis, assume that it was wrong? No, Your Honor. That's why I was asking if you wanted to respond to the argument that it was wrong. Oh, well, in our briefing before the district court, we argued that there was no erroneous outcome and that the outcome was, on its face, correct. And the district court didn't reach that particular issue, and we didn't address it in our briefing on appeal. I know all of that. That's why I was asking the question, because he says that's one element of the claim. It certainly is. I guess you're saying you want us just to assume for the sake of analysis that it's satisfied, since you didn't brief it and you don't want to answer the question? We didn't brief it, Your Honor, no. So the court could assume for purposes of the appeal that that element is satisfied. So you did brief in the district court why you thought there was not an erroneous outcome? We did. We did. We briefed it, and we addressed it point by point and throughout the various stages of the disciplinary process. And the court elected to turn to the- I know what the district court did, but you could argue to affirm on any ground. But I guess you decided not- We did do that in our appeal, Your Honor, or in our briefing. I'd be happy to answer questions about the process if you'd like. Well, what about the timeline argument? Do you have that in mind or not? Sure. I think that the challenge plaintiff faces in trying to undermine the way the decision-makers made their conclusions is that in and of itself, second-guessing decision-makers based on lots of circuit cases, that isn't appropriate. That isn't something that the courts are supposed to do. There's discretion reserved to these educational institutions to try and manage these student disciplinary issues the best they can. And the fact that someone may, after the fact, come up with different arguments that weren't made before the disciplinary tribunal to try to second-guess it just isn't sufficient to demonstrate an erroneous outcome. All right. And if the court has no further questions, I'll see the rest of my time. Thank you. With my time, I'd like to make three points as fast as I can. I'll obtain all questions. One is this is not a disparate impact case because of what I pointed out about colleges implementing the 2011 Dear Collin Lickletter, knowing what was involved, and failing to have fair procedures. That takes it out of the realm of impact into intent. Two, the second-guessing point is based on a misapplication of Davis v. Monroe Court. That did not deal with this kind of Title IX case, but with the school's responsibility to have an environment free of sexual harassment. It's an entirely different branch of Title IX, and their schools are given leeway so that they set up harassment-free environments. It is not addressed to test for intentional discrimination. Dovey Columbia would be wrong if that were true. And finally, as to the ADA, the father who had filed FERPA papers talked to the dean who was not only the head of the disability office services, but also the prosecuting attorney at the hearing. He would know what accommodations were appropriate, should have discussed with the father what was appropriate at that time. He didn't. He didn't. And no accommodations were made. That hearing is a travesty. And I point that out in my papers because you have a dean as a prosecuting attorney saying, I'm here, believe her, I want expulsion. And what, this kid is supposed to be his own lawyer? Come on. The ADA was violated here. And this doesn't even get into constructive notice where not only Thomas makes a request in academic accommodations, got them, there is no procedure in the disciplinary context to make accommodation requests. He did tell the investigators. What were the rules about counsel in this procedure? Well, there weren't any for disciplinary procedures. That's the point. There weren't any what? There wasn't a channel in the disciplinary procedure to make a request, a formal request for accommodations. He talked to the investigators. I'm not talking about the accommodations. You said what was he supposed to do, be his own lawyer? Oh, at the hearing. Excuse me. What were the rules about counsel? Well, the general rules are, and this is the point. The general rules, he can have an advisor, and he did, but he's got to conduct all the questioning and cross-examination. Off a computer with screens of the questions, right, in this case? No. No. I thought, tell me if I'm wrong, I thought the attorney conducted the opening statement. Is that true or false? That's true, but. I thought that he had representation at the hearing. Is that true or false? No, he's called an advisor. Now tell me. Okay, he could call his own witnesses, right? Thomas did, not the attorney. And I thought there was a computer screen where there were questions. No, that's on the record. Okay. Is it on the record that questions were given by counsel? During the hearing, he could try to hear it in the ear. Remember, his disability is ADHD, word retrieval, and he can't function that way. I'm just interested in the facts. In the briefs, I give some quotations about what was going on and why it was unfair to Thomas. What accommodation he should have had was given his ADHD and word retrieval problems. Did counsel do any examination? Counsel, I mean, he is actually. Counsel did the closing. I didn't get to my last one.  I don't think there were closing arguments. Oh, okay. You know, it was. Look, as I briefed, I don't think it remotely is the kind of proceeding that should be allowed with any disabled student because in the end, and I cite to when he tries to cross-examine the investigator, Cerna, there's a cascade of objections from the lawyer for Jane and for the prosecuting attorney. Quite frankly, in this situation, he's a, let's call him a kid, who's dealing with the main prosecuting attorneys, the dean with his PhD, saying I want you expelled and believe Jane, and there's an attorney there for Jane Doe. It was two versus one. That didn't satisfy the ADA. Some accommodations should have been discussed by Parker with the father when it was raised then, and it was certainly constructive notice. Mershon doesn't preclude constructive notice. I've taken more time than I should have. Thank you for your argument. I have a lot to say. Very well.